```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SAMUEL CHISHOLM,<br><br>               Plaintiff,<br><br>    v.<br><br>AFNI, INC.,<br><br>               Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-3625(JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Amy L. Bennecoff Ginsburg, Esq.
Kimmel & Silverman, P.C.
1930 E. Marlton Pike, Suite Q29
Cherry Hill, NH 08003
-and-
Matthew Brian Gross, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
    Attorneys for Plaintiff

Jason J. Oliveri, Esq.
Concepcion A. Montoya, Esq.
Hinshaw & Culbertson LLP
800 Third Avenue, Third Floor
New York, NY 10022
    Attorneys for Defendant

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    Plaintiff Samuel Chisholm brings this case against Defendant AFNI, Inc., alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.,

and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, arising from telephone calls placed in connection with Defendant's efforts to collect a consumer debt. Before the Court is Defendant's motion for summary judgment.

The principal issue is whether a series of 18 telephone calls from a debt collector, of which 17 were unanswered and one where the recipient hung up, unaccompanied by harsh or threatening language or back-to-back calls, could reasonably be found to violate the FDCPA and the TCPA. For the reasons that follow, the Court will grant Defendant's motion because, upon the facts of this case, as to which there is no genuine dispute, Plaintiff cannot prevail as a matter of law.

## II. BACKGROUND[1]

Plaintiff Samuel Chisholm had an account with DirecTV which became delinquent at some point and was referred on April 28, 2015 to Defendant AFNI for collection. (Montoya Decl. Ex. 6, Deposition of Samuel Chisholm ("Chisholm Dep."), at 35:17-25.) Plaintiff provided his cellular telephone number to DirecTV as part of his contract with the company. (Montoya Decl. Ex. 4, Plaintiff's Responses to Defendant's First Requests for Admission, at ¶ 6.) DirecTV provided Defendant with information

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment.

2

regarding Plaintiff's delinquent account, including Plaintiff's name, home address, and telephone number. (McKeighan Aff. ¶¶ 5-6.)

On April 30, 2015, Defendant sent Plaintiff a collection letter, or Validation Notice, and attempted to contact him on his cell phone. (McKeighan Aff. ¶¶ 7 & 10; see also Ex. A, Account Notes; Ex. C, Validation Notice.) Defendant placed the following calls to Plaintiff's cell phone: twice on April 30, 2015; once on May 1, 2015; once on May 2, 2015, twice on May 4, 2015; three times on May 5, 2015; once on May 6, 2015; twice on May 7, 2015; twice on May 8, 2015; once on May 9, 2015; twice on May 11, 2015; and once on May 12, 2015. (McKeighan Aff. ¶ 7; see also Ex. A.) On May 18, 2015, Defendant received a letter from Plaintiff's attorney that all communication with him should be directed to his attorneys. (McKeighan Aff. Ex. D, Letter from Kimmel & Silverman P.C. to AFNI, Inc.) Consistent with its policy, AFNI then coded Plaintiff's account as a "cease and desist" account and stopped all calls. (McKeighan Aff. ¶ 12; see also Ex. A.) In all, Defendant placed 18 calls in 13 days.

Plaintiff attempts to dispute the number and frequency of these calls. According to Defendant, AFNI's electronic account notes recorded 18 calls to Plaintiff's cell phone during those two weeks, with no more than three calls in a single day over the course of a few hours, and most days with only a single call

(see McKeighan Aff. Ex. A). Those numbers are corroborated by Plaintiff's cell phone records produced by T-Mobile. (See Montoya Decl. Ex. 5, T-Mobile Response to Subpoena Served on Metro PCS [Docket Item 21-2].) Defendant reached Plaintiff by phone only one time, when an AFNI representative identified himself and asked to speak with Mr. Chisholm, who hung up seconds later. (McKeighan Aff. Ex. B, Audio Recording of April 30, 2015 Call; Montoya Decl. Ex. 7, Transcript of April 30, 2015 Call.) This is the only recorded evidence of any dialogue between Plaintiff and Defendant's representatives. The other 17 call attempts were unanswered.

    Plaintiff's recollection differs. He maintains that he received calls from AFNI "that were not recorded in its records, namely that he received calls from AFNI multiple times a day and multiple days a week with calls coming in rapid succession." (Plaintiff's Response to Defendant's Statement of Material Facts ¶ 1.) Although he could not recall specifics, and kept no contemporaneous records of such calls, Plaintiff testified at his deposition that he received calls "multiple times during the day" (Chisholm Dep. at 90:13-14) or "five times in one day," (id. at 116:25-117:1; see also Montoya Decl. Ex. 3, Plaintiff's Responses to Defendant's First Set of Interrogatories, at ¶ 18), that Defendant "would call and hang up, like two minutes later call [back]," (Chisholm Dep. at 92:1-2), and that Defendant used

4

an automated dialing machine to leave prerecorded messages on his voicemail. (Id. at 114:5-23.) Plaintiff also recalls speaking with a live AFNI representative at least one more time than AFNI's records show, during which call he told Defendant to stop calling, and that AFNI's calls continued after that conversation. (Chisholm Dep. at 92:16-24.) Essentially, Plaintiff's dispute arises from his belief in the inauthenticity or inaccuracy of the records produced by AFNI and his own cell phone carrier T-Mobile, because those records do not match his later recollection of the 2015 calls.

Plaintiff filed this five-count action against AFNI, Inc. on May 29, 2015, bringing claims for actual and statutory damages pursuant to the FDCPA and TCPA arising from these telephone calls in April and May of 2015. [Docket Item 1.] After the parties exchanged discovery, Defendant filed the instant motion for summary judgment. [Docket Item 21.] The motion is now fully briefed and the Court will decide without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact

5

exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id.  Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, here the Plaintiff, and must provide that party the benefit of all reasonable inferences. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d

6

360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

**IV. DISCUSSION**

   **A. FDCPA Claims**

The FDCPA was enacted "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors." F.T.C. v. Check Investors, Inc., 502 F.3d 159, 165 (3d Cir. 2007). "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." Id. (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997).) "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015) (citing Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014)). It is undisputed that Plaintiff is a consumer, that Defendant is a debt collector, and that Defendant was attempting to collect a

7

debt owed to DirecTV. Only the fourth prong is disputed here; Plaintiff asserts that Defendant violated §§ 1692d, 1692d(5), & 1692f[2] of the FDCPA by placing at least 18 calls to his cellular phone between April 30, 2015 and May 12, 2015.

### 1. Section 1692d and 1692d(5)

Section 1692d of the FDCPA makes unlawful "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statue identifies certain conduct that is per se "a violation of this section," including as relevant here, "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Id. at 1692d(5). Defendant argues that it is entitled to summary judgment because Plaintiff cannot show that these 18 calls constitute abusive conduct, sufficient for a violation of § 1692d, or that Defendant acted with an "intent to annoy, abuse, or harass any person," sufficient for a violation of § 1692d(5). Plaintiff opposes summary judgment on two grounds: first, that the number of calls made to Plaintiff's cell phone is a material

---

[2] Count IV of the Complaint additionally alleges a violation of § 1962g(a). Plaintiff concedes that summary judgment is warranted on this claim. (Pl. Opp. Br. at 12.) Accordingly, Defendant's motion for summary judgment is granted as to Count IV.

disputed fact, and second, that the harassing or abusive nature of the calls presents a question for a jury.

The Court must first decide whether there is a genuine dispute of material fact over the number of calls made during the two weeks in April and May of 2015, as Plaintiff claims; the number, frequency, and timing of the phone calls is an important factor in determining whether Defendant's conduct constitutes harassing or abusive behavior. Plaintiff has submitted his own sworn deposition testimony and discovery responses to support his subjective assertion that AFNI representatives called more than the 18 instances documented in AFNI's Account Notes and T-Mobile's call logs.

In opposition to summary judgment, a party must support its assertion of a genuine dispute of fact by "citing to particular parts of the materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010). "Even a party's sincere belief that an event occurred on a particular date, when confronted by strong, contemporaneous documentation to the contrary, may not suffice to create a genuine issue of fact." Simone v. Narducci, 262 F. Supp. 2d 381, 386 (D.N.J. 2003). In this case, Plaintiff's assertions as to the quantity and frequency of calls are

9

supported only by his vague, post-hoc recollections and contradicted by contemporaneous documentary evidence from his own cell phone carrier and from Defendant's contemporaneous telephone logs. Sworn affidavit and deposition testimony, "without substantive documentation of these phone calls," will not do. Derricotte v. Pressler & Pressler, LLP, Case No. 10-1323, 2011 WL 2971540, at *4 (D.N.J. July 19, 2011). The Court finds that Plaintiff's proofs only raise a metaphysical doubt about the number of calls placed by Defendant's representatives, which is simply not enough to create a genuine issue. When plaintiff's testimony is viewed alongside the objective evidence in the record that establishes the number, time, and duration of each call, no rational trier of fact could find for Plaintiff as to a greater number or intensity of calls. As such, the record establishes that Defendant placed only 18 calls to Plaintiff over the course of two weeks, all of which came between the hours of 9:30 a.m. and 7 p.m. and only one of which resulted in voice to voice contact of very brief duration.

Courts generally allow juries to decide whether a debt collector's conduct is annoying, abusive or harassing. Rush v. Portfolio Recovery Assocs., 977 F. Supp. 2d 414, 429 (D.N.J. 2013). "Actual harassment or annoyance turns on the volume and pattern of calls made," and "[t]here is no consensus as to the amount and pattern of calls necessary for a court to infer a

10

debt collector intended to annoy, abuse, or harass a debtor." Turner v. Professional Recovery Servs., Inc., 956 F. Supp. 2d 573, 578 (D.N.J. 2013). Nonetheless, "if the conduct has – or does not have – the natural consequence of harassing, oppressing or abusing the consumer as a matter of law, summary judgment is appropriate." Derricotte, 2011 WL 2971540, at *3 (citing Regan v. Law Offices of Edwin A. Abrahamson & Assocs., 2009 WL 4396299, at *6 (E.D. Pa. Dec. 1, 2009)). Courts around the country have held that the number of calls alone cannot violate the FDCPA; a plaintiff must also show some other egregious or outrageous conduct in order for a high number of calls to have the "natural consequence" of harassing a debtor. Turner, 956 F. Supp. 2d at 580; see also Shand-Pistilli v. Professional Account Servcs., Inc., Case No. 10-1808, 2011 WL 2415142, at *5 (E.D. Pa. June 16, 2011) (noting that, while "an immediate callback after the debtor has hung up . . . . may constitute improper harassment, . . . [a] debt collector does not necessarily engage in harassment by placing one or two unanswered calls in a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."); Pace v. Portfolio Recovery Assocs., LLC, 872 F. Supp. 2d 861, 864 (W.D. Mo. 2012) ("It has been held that the number of calls, without more, does not constitute evidence of a violation of the FDCPA."); Durthaler v. Accounts Receivable

11

Mgmt., Inc., 854 F. Supp. 2d 485, 491-92 (S.D. Ohio 2012) (granting summary judgment on § 1692d claim where 32 calls were made because "[i]n the instant action, not only were the calls not made continuously or repeatedly, there are also no circumstances indicating the nature or context of calls were harassing."); Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) ("In this case, the Court finds there is no evidence of an unacceptable pattern of calls. The record is lacking any indicia of the type of egregious conduct raising issues of triable fact when coupled with a high call volume."); Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 ("None of the egregious conduct identified above is present in this case. Ms. Arteaga presents no evidence that Asset called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested Asset to cease calling."); Tucker v. The CBE Group, Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment on § 1692d(5) claim where Plaintiff alleged violation based only on frequency of calls, noting that "[w]hile the number of calls made during the relevant time period does seem somewhat high, Defendant left only a total of six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message.")

The nature of the telephone calls in this case does not strike the Court as excessive or harassing: Defendant's representatives never called more than three times in one day, with at least three hours between attempts, each was unanswered, and all during regular business hours between the hours of 9:30 a.m. and 7 p.m.; Plaintiff was not called every day during the relevant time period; only one call resulted in actual voice contact with Plaintiff; the transcript of that call shows that Defendant's representative conducted himself politely and the duration was less than 40 seconds; and Defendant immediately ceased calling Plaintiff upon receiving a letter from his lawyer on May 18, 2015. Plaintiff has pointed to no harassing, threatening or vulgar language. See McKeighan Aff. Ex. A.

In the present case, no reasonable jury could find that the quantity, frequency, and proximity of the telephone calls demonstrates conduct, the natural consequence of which is to harass, oppress, or abuse the plaintiff under § 1692d. There is no way to interpret these undisputed facts other than to conclude that Defendant's representative was attempting to make normal and permissible contact with Mr. Chisholm regarding his overdue debt to DirecTV. Defendant placed 18 calls over a period of two weeks, of which 17 were unanswered. All were during normal business hours. The single instance of voice contact lasted a matter of seconds before Plaintiff hung up. There was

no intemperate or improper language, let alone threats, vulgarity or insistence. There were no back-to-back calls. Defendant's representative immediately heeded Plaintiff's only request to stop calling. The FDCPA was not intended to prevent debt collectors from contacting debtors at all, or to "impose unnecessary restrictions" on ethical collectors. Check Investors, 502 F.3d at 171. By its own terms, the purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while insuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692 (emphasis added). The standard for deciding when conduct is harassing, oppressive, or abusive is an objective one, turning on the "natural consequences" of a debt collector's conduct. 15 U.S.C. § 1692d. That Mr. Chisholm now professes to have subjectively felt annoyed by the calls does not change the objective assessment of Defendant's conduct.

In other words, based upon this undisputed evidence the Defendant is entitled to summary judgment as a matter of law. There is no admissible evidence from which a jury could find for Plaintiff under § 1692d or § 1692d(5). For these reasons, the Court will deny Defendant's motion for summary judgment as to Counts I and II of the Complaint.

    **2. Section 1692f**

Plaintiff also seeks relief under § 1692f, a provision of the FDCPA which makes unlawful "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This section "is considered to be a catch-all provision for conduct that is unfair but is not specifically identified in any other section of the FDCPA." Rush, 977 F. Supp. 2d 414, 432 (D.N.J. 2013.) "Courts have therefore determined that § 1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA, and routinely dismiss § 1692f claims when a plaintiff does not identify misconduct beyond that which he asserts violates other provisions of the FDCPA." Id. (quoting Turner, 956 F. Supp. 2d at 580 and Christy v. EOS CCA, 905 F. Supp. 2d 648, 656 (E.D. Pa. 2012)) (internal citations omitted).)

Here, because Plaintiff's § 1692f claim is premised on the same conduct as his § 1692d and § 1692d(5) claims – the cell phone calls – he cannot maintain a separate cause of action. Perhaps because there was almost no verbal exchange between Plaintiff and Defendant, the Plaintiff has pointed to no evidence of "unfair or unconscionable" conduct. Absent any evidence in the record of other allegedly unfair conduct, the Court will grant Defendant's motion for summary judgment as to Count III of the Complaint for violation of § 1692f.

### B. TCPA Claim

"Enacted in 1991 as part of the Federal Communications Act," the TCPA seeks to address "an increasingly common nuisance—telemarketing." Erienet, Inc. v. Velocity Net, 156 F.3d 513, 514 (3d Cir. 1998). The TCPA prohibits, inter alia, the use of "any automatic telephone dialing system or an artificial voice" to call "any telephone number assigned to a . . . cellular telephone service" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA accordingly enables an aggrieved individual or entity to bring a private right of action to recover the greater of the party's "actual monetary loss" from the TCPA violation, or "$500 in damages for each such violation[.]"  47 U.S.C. § 227(b)(3)(A)-(C).

Here, the parties dispute whether Plaintiff provided express consent to be called on his cell phone. Defendant contends that it is entitled to summary judgment on this claim for two reasons: first, because Plaintiff provided prior express consent to DirecTV to contact him by providing his phone number and address as part of his written contract for television service, and that consent extended to AFNI when DirecTV assigned Plaintiff's delinquent account to AFNI for collection; and second, because Plaintiff cannot show that Defendant used an

16

automatic dialing system or an artificial voice in its calls. Plaintiff argues that summary judgment is inappropriate because there are factual disputes regarding his consent and Defendant's use of prerecorded voices. However, for the reasons that follow, the Court finds that these disputes are not genuine and that Defendant is entitled to summary judgment on this claim.

Under the TCPA, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." Rules and Regulations Implementing the Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992). With respect to calls from a creditor regarding a particular debt, "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Rules and Regulations Implementing the Consumer Protection Act of 1991, 23 FCC Rcd. 559, 564-65 (2008). Prior express consent extends to "[c]alls placed by a third party collector on behalf of that creditor." Id. It is the creditor's burden to demonstrate that a consumer provided prior express consent. Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 366 (3d Cir. 2015).

17

In this case, it is undisputed that Plaintiff had a written contract with DirecTV for cable television service, that he provided his address and phone number to DirecTV, and that Defendant called Plaintiff to collect on that debt after DirecTV referred the account to AFNI. (Chisholm Dep. at 35:17-36:20; see also Plaintiff's Responses to Defendant's First Requests for Admission, at ¶ 6.) Plaintiff contends that this is insufficient to show "prior express consent" to be called by DirecTV because "[t]here is no evidence in the record about whether the phone number was given to DirecTV during the transaction that resulted in the debt as opposed to updating them later." (Pl. Opp. Br. at 14.) Plaintiff's dispute is purely hypothetical: although it is possible that he did not provide this phone number when he opened the DirecTV account that eventually became the consumer debt at the center of this dispute, he can point to nothing in the record that shows that he provided his cell phone number to DirecTV at some later date, after signing his contract. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Accordingly, the Court finds that Defendant has set forth undisputed facts showing that Plaintiff provided prior

18

express consent to be called by a creditor or a third party collector about his DirecTV account.

Furthermore, Plaintiff has not created a genuine dispute over whether he revoked that consent.[3] Although Plaintiff presents deposition testimony that he asked AFNI to stop calling him during "the second call I got after the first call" (see Chisholm Dep. at 92:16-24), Plaintiff's account is contradicted by the actual transcript and audio recording of that call. (See McKeighan Aff. Ex. B, Audio Recording of April 30, 2015 Call; Montoya Decl. Ex. 7, Transcript of April 30, 2015 Call.) Again, Plaintiff cannot use his recollection to contradict the clear content of the conversation in which he participated, reflected in the recording and in the transcript thereof. This is a false dispute of fact, not a genuine one.

For these reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff's TCPA claims in Count V of the Complaint.

---

[3] Because Defendant has shown that Plaintiff provided consent to be called about the DirecTV debt at the center of this dispute, and therefore cannot be liable under the TCPA, the Court need not reach the question of whether Defendant used an autodialing system or prerecorded voice to place its calls.

19

## V.  CONCLUSION

An accompanying Order will be entered.


**November 22, 2016**                               **s/ Jerome B. Simandle**
Date                                                JEROME B. SIMANDLE
                                                    Chief U.S. District Judge